## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW LENNON,** | CIVIL ACTION NO. 25-cv-04443-GAM |
| **Plaintiff,** | Report of Rule 26(F) Meeting |
| **v.** | **In advance of the October 30, 2025 In-Person Initial Conference at 11:30 a.m.** |
| **MIDLAND CREDIT MANAGEMENT, INC.,** | |
| **Defendant.** | |

## <u>REPORT OF RULE 26(f) MEETING</u>

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties conferred on **September 19, 2025** and submit the following report of their meeting for the Court's consideration:

Date of Rule 16 Conference <u>October 30, 2025</u>
Time of Rule 16 Conference <u>11:30 a.m.</u>

**1.    Discussion of Claims, Defenses, and Relevant Issues**

You should assume that the Court has read the complaint and is familiar with the claims. However, the facts supporting those claims and defenses are unknown. Therefore, counsel shall set forth concisely the controlling facts that the parties contend support their claims and defenses.

If counsel contends that one or more issues of fact or law will be dispositive, they should specifically identify such issues.

**By Plaintiff:**

Plaintiff asserts that the scope of the Release that resolved the collection action, *Midland Credit Management, Inc., v. Matthew Lennon*, Docket No. MJ-38102-CV-0000109-2023, included any and all claims that Midland could have asserted against Plaintiff—including any other

collection accounts Midland owned on the date the release was signed. This conclusion is drawn from the plain language of the release itself, which specifically states that "Midland Credit Management, Inc. releases Matthew Lennon and all attorney *from all claims*." (emphasis added). The Supreme Court of Pennsylvania "has stated that the effect of a release must be determined from the ordinary meaning of its language." *Buttermore v. Aliquippa Hosp.*, 522 Pa. 325, 328-29 (1989),[1] and the ordinary language of "all claims" means that all of the claims are being released.

Defendant highlights one phrase of the Release—the portion which states that "the release of *the debt* in this matter does not constitute the 'discharge of indebtedness' . . . ." (emphasis added) as indicating that the Release is limited solely to one account. However, Defendant is simply cherry picking one phrase of the Release, and the phrase it isolates does not actually imply the meaning that it suggests when read in conjunction with the rest of the Release. Specifically, in the same sentence as the language highlighted by Defendant, the Release states: "The parties acknowledge that the *claims* being released . . . ." (emphasis added). And, in the Release Midland agreed to delete any "tradeline associated with the *claims* released herein." (emphasis added). When read in connection with the rest of the release—including the undoubtedly broad release of "all claims"— it is clear that the Release covers all claims that could be at issue. At most, the phrase highlighted by Defendant means that only the debt that was asserted in the collection action would not

---

[1] In *Buttermore*, the plaintiff had issued a release to a driver involved in an automobile accident. The scope of the claims released in *Buttermore* was narrower than the scope of the claims released here. But, the release in *Buttermore* applied to more people, stating in relevant part that the release applied to: "[the driver], [h]is/her successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators and any and all other persons, associations and/or corporations . . . ." *Buttermore,* 522 Pa. at 327. Based on this language, the Court then held that this broad release applied to medical providers who had treated the plaintiff—even though those medical providers had no connection at all with the driver who was the other signatory to the release. Thus, if a release can be construed broadly enough to cover claims against entities with no relation to the signatories, there would certainly not be anything improper or surprising about a release being construed broadly to cover "all claims" between the actual signatories of the release.

constitute the discharge of indebtedness as defined in the tax code, while other debts may constitute the discharge of indebtedness.

**By Defendant:**

MCM denies that the scope of the Release that resolved the collection action, *Midland Credit Management, Inc., v. Matthew Lennon*, Docket No. MJ-38102-CV-0000109-2023, related to Plaintiff's $7,555.67 debt obligation originally owed to Comenity Capital Bank. The Release confirms that it releases all claims pertaining to that debt: "… the release of the debt in this matter". See Exhibit "A" to the Complaint. The debt at issue in this litigation was not the subject of the collection action, and was originally owed to Capital One, N.A., in the amount of $3,396.66. MCM contends that Plaintiff's Capital One debt was not cancelled as a result of the Release that resulted in the conclusion of the Lennon collection lawsuit and Plaintiff's Commenity Capital Bank debt. Therefore, MCM denies that Plaintiff has advanced any viable FDCPA or FCRA claim in connection with Plaintiff's valid and delinquent Capital One debt obligation owed to MCM. Further, MCM denies that the Release in the collection action serves to release Plaintiff from the entire universe of debt obligations he owed to MCM.

MCM identifies, *Lennon v. Experian Information Solutions, Inc*., 2:24-cv-05548-NIQA, a now-resolved matter, where Plaintiff alleges FCRA claims against Experian based on the same debt that is the subject of the present litigation. Additionally, MCM identifies *Lennon v. Trans Union*, 2:25-cv-01431-CFK, concluded via Trans Union's successful motion to dismiss, where Plaintiff, once again, alleges FCRA claims against Trans Union based on the same debt that is the subject of the present litigation. The issue in the present case, and in the Experian and Trans Union cases, is the same. That the mutual release executed in connection with Plaintiff's Commenity Capital Bank debt, despite being specific to that debt, should be read over-broadly to

include any other debt owed by Plaintiff an owned by MCM, preceding the execution of the mutual release.

### 2.    Informal Disclosures

Except in exceptional cases with a substantial quantity of documents, the parties are expected to have identified and **produced** documents falling within the definition of initial disclosures under Rule 26(a)(1) in advance of the Conference with sufficient time for opposing counsel to review them and be prepared to address them.

If the parties have not made the Rule 26(a) initial disclosures within the time required by the Court's Order scheduling the pretrial conference, they should explain why not.

### 3.    Formal Discovery

Describe the nature, sequence and timing of formal discovery, including any reason why the Court should consider phased discovery.

**The parties intend to issue written discovery in the form of interrogatories, requests for production and requests for admission.   Additionally, Plaintiff will seek to depose a corporate designee of Midland Credit Management.   Defendant will depose Plaintiff Defendant may need to conduct third party discovery in connection with Plaintiff's other lawsuits.**

Estimate the number of depositions and state whether any depositions will occur outside the Eastern District.  State whether third party discovery will be necessary, and identify the source for such discovery.

**The parties do not anticipate more than 5 depositions per side, and are optimistic that fewer depositions will be needed. In order to reduce costs, the parties will likely agree to conduct depositions via Zoom, but reserve the right to seek an in-person deposition at their discretion.**

Identify any areas likely to give rise to disputes as to the proper scope of discovery, including issues of privilege or confidentiality. If a protective order is requested, counsel should agree on its terms or submit proposed orders for the Court's consideration at the Conference. Discovery should not be delayed by negotiation over the terms of a protective order.

**It is anticipated that Midland Credit Management, Inc. will request a protective order. The parties will attempt to negotiate one, and will submit an agreed upon document if they are successful.**

The discovery deadline should normally be no more than 120–150 days from the date of the Rule 16 Pretrial Conference. If the parties believe there are compelling reasons for a longer period of discovery, state them.

**The parties request 150 days for fact discovery.**

### 4.    Electronic Discovery

It is expected that the parties will reach an agreement on how to conduct electronic discovery, including the proper scope of such discovery. The parties are expected to address procedures to preserve electronically stored information, avoid inadvertent privilege waivers, and determine the form in which electronic information will be produced. The cost of producing the information must be discussed. In the event the parties cannot reach such an agreement before the Rule 16 Conference, the Court will enter an order incorporating default standards. The default order can be viewed at www.paed.uscourts.gov.

**The parties agree to the use of the default order.**

### 5.    Expert Witness Disclosures

Submit a proposal on both the timing and the sequence of expert discovery. Except in unusual circumstances, the Court's scheduling order does not add time for expert depositions.

Rather, it provides that any such depositions may be taken at any point until the final pretrial conference.

**The parties will submit expert depositions within 60-days of the close of fact discovery.**

6.    **Insurance Coverage**

The parties shall provide full information about any **potentially** applicable insurance, regardless of any disclaimer or reservation of rights, including the limits of coverage, potential excess coverage, deductibles, self-insured retention (SIR), and whether any deductible or SIR includes payment of counsel fees and costs.

**Defendant has no insurance that would cover the claims asserted against it in this matter.**

7.    **Settlement or Resolution**

The parties should review Local Rule 53.3 before responding.  Whenever possible, plaintiff or counter-claim plaintiffs should communicate a settlement demand before the Conference. Set forth the parties' discussion about early resolution through ADR, motion or otherwise explain what steps were taken by counsel to advise the client of alternative dispute resolution options.

**The parties have agreed that mediation should be conducted after the close of fact discovery. In the meantime, the parties are engaging in informal discussions to see if settlement is possible.**

8.    **Trial date**

If a date certain is requested, state the reasons.

9.    **Length of Trial**

State the anticipated length of the trial of this matter.

**3 days**

**10.**    Other Matters

Indicate discussion and any agreement on matters not addressed above.

Respectfully submitted,

*s/ Brett M. Freeman*
Brett M. Freeman
Bar Number PA 308834
FREEMAN LAW
606 Hamlin Highway, Suite 2
Lake Ariel, PA 18436
P: (570) 589-0010
F: (570) 456-5955
brett@freeman.law

Attorney for Plaintiff


/s/ *Andrew M. Schwartz*
Andrew M. Schwartz
MESSER STRICKLER BURNETTE, LTD.
935 E. Lancaster Ave., #1003
Downingtown, PA 19335
☎ 320-434-9664
🖳 312-334-3474
🖅 Aschwartz@messerstrickler.com

Lauren M. Burnette
MESSER STRICKLER BURNETTE, LTD
1200 Riverplace Blvd. Suite 105 #1558
Jacksonville, FL 32207
☎ (904) 892-6936
🖳 (904) 298-8350 (fax)
🖅 lburnette@messerstrickler.com

Attorneys for Defendant Midland Credit
Management, Inc.